**Elliott Charles RICEHILL, Petitioner,**

v.

**Lou V. BREWER, Warden, Respondent.**

**Civ. No. 10–261–C–1.**

United States District Court,
S. D. Iowa, C. D.

Aug. 10, 1971.

Paul H. Kinion, Cedar Rapids, Iowa, for petitioner.

Richard C. Turner, Atty. Gen., James W. Hughes and Michael J. Laughlin, Asst. Attys. Gen., of Iowa, for respondent.

## MEMORANDUM AND ORDER

STEPHENSON, Circuit Judge.

Elliott Charles Ricehill seeks the issuance of a writ of habeas corpus. Ricehill was given an indeterminate sentence not to exceed 75 years following his conviction by a jury of the murder of Mabel Bigley. His conviction on appeal was affirmed by the Supreme Court of Iowa. State v. Ricehill, 178 N.W.2d 288 (Iowa 1970), cert. denied, March 11, 1971.

There is no question that there was sufficient evidence for the conviction. The record discloses that the murder occurred on July 2, 1968, in the victim's apartment at 118½ First Street, Cedar Rapids, Iowa. Linda Beltran, a state witness, lived in an apartment adjacent to the victim's and testified that Ricehill resided with her part of the time from May through July, 1968, kept his clothing there and slept there the night previous to the murder. Another witness, Valentine Chester Davenport, Jr., testified that at about midnight of July 2 in a tavern Ricehill told him he had ". . found a dead woman in the next apartment where he lived . . . ." About 2:00 a. m., July 3, the two witnesses and Ricehill went to the victim's apartment and observed her nude blood-caked body on the floor, the apartment in disarray and the furniture torn apart. Around 2:30 a. m. Davenport went to the police. Police Captain Judd Longerbeam went to the apartment, observed the body and spoke to Ricehill. Ricehill told Captain Longerbeam that about 5:30 p. m. of the previous afternoon he had given the victim mouth-to-mouth resuscitation while she was still alive. At the Captain's request, Ricehill and Linda Beltran went with the police to the station. Detective Denton Schultz, who had been to the apartment and observed the body with a dog or cat leash draped around its neck, was told by Captain Longerbeam there were three persons considered to be "possible witnesses" and who had been taken to the police station. Detective Schultz went to the station and spoke to Davenport, Linda Beltran and Ricehill, in that order, in the interrogation room in the detective bureau. In the interrogation room Detective Schultz observed that Ricehill's shirt had a "discolored stain," fresh scratches and blood on his hands and wrists and a blood-caked wristwatch with a broken crystal and hands stopped between 5 and 6 o'clock. Ricehill was then charged with vagrancy and the wristwatch and clothing were taken from him. On July 24, 1968, a preliminary information was filed by which he was accused of the murder of Mabel Bigley.

As already intimated above, this Court has not been called forth to determine the guilt of Ricehill, but rather the lawfulness of the means by which the conviction was obtained. Petitioner, in forma pauperis, but through counsel vigorously asserts that the introduction of the wristwatch into evidence at trial was improper as being the product of an illegal arrest. He contends the police had no probable cause to arrest him for vagrancy; that the arrest was a subterfuge, sham and merely a pretext by which to conduct a search and seizure without warrant.

Respondent initially interposes the challenge that petitioner is not properly before this Court for lack of pursuance of any post conviction remedies in the courts of the State of Iowa, therefore concluding that petitioner has not exhausted his state remedies. Ricehill was convicted April 30, 1969. The Uniform Post-Conviction Act became effective in Iowa July 1, 1970, perhaps giving petitioner a new opportunity to challenge his conviction in state court.[1]

■ The issue raised here, however, is identical to that passed upon at trial, in a motion for new trial and motion in arrest of judgment by the trial judge. The issue raised here is likewise identical to that passed upon by the Supreme Court of Iowa in petitioner's appeal. An Iowa Court would undoubtedly conclude that it had already passed upon the issue raised here. In this light, the petitioner has sufficiently exhausted his state remedies so as to satisfy the requirements of 28 U.S.C. § 2254(b). Davis v. Sigler, 415 F.2d 1159, 1161 (8th Cir. 1969).

■ The demands of the Fourth Amendment have been made applicable to the States through the Fourteenth Amendment. Evidence obtained from persons illegally or unreasonably detained and searched is inadmissible against them in the State Courts. Mapp v. Ohio, 367 U.S. 643, 655, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961); Weeks v. United States, 232 U.S. 383, 389, 34 S.Ct. 341, 58 L.Ed. 652 (1914). This rule of exclusion applies irrespective of whether the police conduct complained of was in the investigatory stage or the accusatory stage. Davis v. Mississippi, 394 U.S. 721, 726, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969).

■ Where no federal statute is applicable, however, the states have within their power to fashion rules as to the validity of arrests made by their law enforcement officers. Ker v. California, 374 U.S. 23, 34, 83 S.Ct. 1623, 10 L.Ed. 2d 726 (1963); United States v. Di Re, 332 U.S. 581, 589, 68 S.Ct. 222, 92 L.Ed. 210 (1948); Turk v. United States, 429 F.2d 1327, 1330 (8th Cir. 1970); Montgomery v. United States, 403 F.2d 605, 608 (8th Cir. 1968). The rule that state law determines the validity of an arrest is constrained, however, by the constitutional standard. See Ker v. California, *supra*, 374 U.S. at 34, 83 S.Ct. 1623, 10 L.Ed.2d 726, and Montgomery v. United States, *supra*, 403 F.2d at 608.

■ The constitutional standard as applied to a state arrest is one of "probable cause." If, at the moment of arrest, Detective Schultz possessed sufficient information and knowledge under the circumstances to warrant a prudent man in believing Ricehill had committed or was committing the offense, he had probable cause to make the arrest. See Beck v. Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964); Henry v. United States, 361 U.S. 98, 102, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959). Evidence sufficient to establish guilt is not necessary, nor are the subjective beliefs of the arresting officer determinative. See Beck v. Ohio, *supra*, 379 U.S. at 97, 85 S.Ct. 223, 13 L.Ed.2d 142; McNeely v. United States, 353 F.2d 913, 918 (8th Cir. 1965).

The record discloses that sometime during Schultz' "talk" with Ricehill in the interrogation room (where he observed Ricehill's stained shirt, scratched hands and wrists and blood-caked wristwatch), Ricehill was asked where he resided. According to Detective Schultz

---

1. Code of Iowa § 633A.8 (1971) provides in part, however:

    "Any ground finally adjudicated * * * in the proceeding that resulted in the conviction * * * may not be the basis for a subsequent application * * *."

Petitioner would thereby seem precluded from pursuing any post-conviction remedy under Chapter 663A, which takes the place of all other common law, statutory or other remedies formerly available.

Ricehill gave two addresses; Linda Beltran's apartment and that of a man named Henry. Schultz learned that Ricehill had lived at Henry's address but left one month previously. Schultz stated that Linda Beltran denied that Ricehill lived at her apartment. On the basis of giving a false address, Ricehill was arrested and booked for vagrancy. The watch was seized while he was being processed in.

■ The initial question for this Court is, therefore, whether on the basis of Linda Beltran's denial that Ricehill resided at her address, Detective Schultz had, under the federal standard, probable cause to arrest Ricehill for vagrancy and whether he otherwise effected a lawful arrest under Iowa law.[2]

Code of Iowa § 746.1 (1971) ("Vagrants" defined) reads, in part, as follows:

1. *    *    *    *    *    *
2. *    *    *    *    *    *
3. All persons wandering about and lodging in barns, outbuildings, tents, wagons, or other vehicles, and having no visible calling or business to maintain themselves.
4. *    *    *    *    *    *
5. *    *    *    *    *    *
6. *    *    *    *    *    *

This Court has discovered no Iowa case holding that "probable cause" for arrest for vagrancy exists whenever a person gives a "false" address to a policeman.[3] Granted, an officer would have to do no more under the circumstances than Detective Schultz did here; making inquiry of Linda Beltran, the listed occupant of the apartment. Her denial, however, could create no more than a reasonable belief that Ricehill had given a false address. It most certainly could not give rise to a "probable cause" that

Ricehill had or was committing the offense of "wandering about and lodging in barns . . . and having no visible calling or business to maintain [himself]." In Johnson v. Florida, 391 U.S. 596, 88 S.Ct. 1713, 20 L.Ed.2d 838 (1968), the Supreme Court of the United States overturned a vagrancy conviction based on a Florida statute defining vagrancy much as does Iowa. The court stated,

". . . he was not wandering, or strolling, only sitting [on a park bench]. The bench where he sat was made for sitting and he was using it for that purpose in the precise place where the bench had been placed. * * * We therefore conclude that so far as the 'wandering or strolling' ingredient of the crime is concerned, the record is lacking in any evidence to support the judgment." See also Thompson v. Louisville, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960).

■ Furthermore, it appears that vagrancy is not an indictable public offense in Iowa. See Wright v. Denato, 178 N.W.2d 339, 341 (Iowa 1970); State v. Berg, 237 Iowa 356, 21 N.W.2d 777 (1946); Code of Iowa §§ 746.9, 755.4(3) (1971). In this light, a lawful arrest for vagrancy in Iowa requires more than the minimum federal standard, "probable cause," and "reasonable belief," but also that vagrancy be *in fact* committed. In other words, in order to arrest a person for vagrancy in Iowa, a reasonable belief on the part of the arresting officer that the person is a vagrant is insufficient. He must in fact be a vagrant or the arrest was unlawful. See Code of Iowa § 755.4(2) (1971); State v. Small, 184 Iowa 882, 169 N.W. 116 (1918); Snyder v. Thompson, 134 Iowa 725, 112 N.W. 239 (1907). Contra Note, "Arrest Without Warrant In Iowa, 19 Drake L. Rev. 441, 450 (1970).

---

2. The State Court's conclusions of law are not binding upon a federal court on habeas. See Townsend v. Sain, 372 U.S. 293, 318, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963).

3. The Supreme Court of Iowa in this case appears to have only considered the federal standard without applying it to the Iowa statute on vagrancy.

The record clearly discloses that under Iowa law, petitioner had not attained the status of a vagrant, nor did Detective Schultz have sufficient knowledge to formulate a reasonable belief that Ricehill was a vagrant. Sham arrests utilized as a means to discover evidence to further connect a suspect with a crime have been particularly condemned by the courts of this country as a ". . . technique which makes personal liberty and dignity contingent upon the whims of a police officer, and can serve only to engender fear, resentment, and disrespect of the police in the populace which they serve." Wainwright v. City of New Orleans, 392 U.S. 598, 607, 88 S.Ct. 2243, 2250, 20 L.Ed.2d 1322 (1968) (dissenting opinion); Mills v. Wainwright, 415 F.2d 787 (5th Cir. 1969); Collins v. United States, 289 F. 2d 129 (5th Cir. 1961). *Cf.* Davis v. Mississippi, 394 U.S. 721, 89 S.Ct. 1394, 22 L.Ed.2d 676 (1969). See also Lacey, "Vagrancy and Other Crimes Of Personal Condition," 66 Harv.L.Rev. 1203 (1953); Hall, "The Law Of Arrest In Relation to Contemporary Social Problems," 3 U.Chi.L.Rev. 345 (1936).

An arrest for vagrancy under the circumstances indicated in the record of this case, however, does not force the conclusion that the arrest was solely a sham, or mere pretext. With a view to the substance of the events which took place rather than form, it is quite clear that Detective Schultz possessed sufficient information and knowledge under the circumstances to warrant a prudent man in believing Ricehill had committed the murder of Mabel Bigley. He had, therefore, probable cause to arrest the petitioner for *murder*. The Constitution does not demand technical perfection in police arrest procedures. It only requires, *inter alia*, that the arresting officer have had probable cause to make the arrest. It is present in this case. See United States v. Whitney, 425 F.2d 169, 170 (8th Cir. 1970); United States v. Bonds, 422 F.2d 660, 664 (8th Cir. 1970); Klingler v. United States, 409 F.2d 299, 304 (8th Cir. 1969) and McNeely v. United States, 353 F.2d 913, 918 (8th Cir. 1965). Accordingly, the Court must deny the writ.

It is ordered that the petition of Elliott Charles Ricehill for a writ of habeas corpus be and is hereby denied.